UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
KENNETH P. FERNANDEZ and
MARYANN E. FERNANDEZ                              Chapter 7

            Debtors                               Case No. 06-20296

------------------------------------------

FL RECEIVABLES TRUST 2002-A          )            Adversary Proceeding
                                     )
            Plaintiff                )            No. 06-2059
                                     )
      v.                             )
                                     )
KENNETH P. FERNANDEZ and             )
MARYANN E. FERNANDEZ                 )
                                     )
            Defendants               )

APPEARANCES:

Susan Kim, Esq.
Bingham McCutchen, LLP
One State Street, Hartford, CT 06103
Counsel for Plaintiff

Patrick W. Boatman, Esq. and Jenna N. Sternberg, Esq.
Law Offices of Patrick W. Boatman, LLC
111 Founders Plaza, Suite 1000, East Hartford, CT 06108
Counsel for Defendant-Debtors

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KRECHEVSKY, U.S.B.J.

I.

Kenneth P. Fernandez ("Mr. Fernandez") and Maryann E. Fernandez ("Mrs. Fernandez") (together "the debtors) filed a Chapter 7 petition on April 20, 2006. FL Receivables Trust 2002-A ("the plaintiff"), on September 12, 2006, commenced the

captioned adversary proceeding against the debtors requesting that certain debts be held nondischargeable and that the debtors be denied a discharge. The plaintiffs, on August 20, 2007, filed a motion for summary judgment on each of the six counts of the complaint. The parties have filed their statements of fact, memoranda of law, and supporting documents in accordance with D.Conn. L.Civ.R. 56,[1] made applicable in bankruptcy proceedings by D.Conn.LBR 1001-1.

## II.

## BACKGROUND

Mr. Fernandez is the sole shareholder of Irish Pub Restaurants, Inc.("IP"), a

---

[1] D.Conn. L.Civ.R. 56, in pertinent part, provides:
(a) Motions for Summary Judgment
1. There shall be annexed to a motion for summary judgment a document entitled "Local Rule 56(a)1 Statement," which sets forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.
2. The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 and corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied. The Local Rule 56(a)2 Statement must also include in a separate section entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.
3. Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.

Delaware corporation that was the franchisee for several Bennigan's restaurants, and of CDM Restaurants, Inc. ("CDM"), a Connecticut corporation that operates several of IP's restaurants in Massachusetts and Connecticut, for which it receives a management fee equal to 5% of gross sales. In addition, Mr. Fernandez has a 50% interest in Advanced Construction Management, Inc ("ACM"). Each of the debtors has a 24.5% interest in Fifth Alarm Restaurant Group, LLC ("FAR"); the debtors' son holds the remaining 51% interest therein.

In 2000, IP obtained three loans from Captec Financial Group, Inc. ("Captec") for the acquisition, operation and/or construction of its restaurants in Framingham and Boston, Massachusetts and Vernon, Connecticut. The debtors do not dispute the following description of the transactions by the plaintiff in its Rule 56(a)1 Statement of facts:

    A.    <u>The Framingham Loan</u>
    19.    On or about April 4, 2000, Irish Pub executed and delivered a promissory note made payable to Captec Financial Group, Inc. ("Captec") relating to Irish Pub's acquisition and/or operation of a Bennigan's restaurant located in Framingham, Massachusetts (the "Framingham Note"). Pursuant to the Framingham Note, Irish Pub promised to pay Captec the principal amount of $545,000, together with interest and other amounts thereon according to its tenor.
    20.    On or about April 4, 2000, CDM executed and delivered to Captec a Guaranty (the "Framingham Guaranty") pursuant to which CDM unconditionally guaranteed performance of all of Irish Pub's duties, obligations and covenants under the Framingham Note and the documents executed in connection therewith, including paying all sums due thereunder.

    B.    <u>The Boston Loan</u>

    21.    On or about April 4, 2000, Irish Pub executed and delivered a promissory note made payable to Captec relating to Irish Pub's acquisition and/or operation of a Bennigan's franchise restaurant

3

located in Boston, Massachusetts (the "Boston Note"). Pursuant to the Boston Note, Irish Pub promised to pay Captec the principal amount of $1,555,000, together with interest and other amounts thereon according to its tenor.

22. On or about April 4, 2000, CDM executed and delivered to Captec a Guaranty (the "Boston Guaranty"), pursuant to which CDM unconditionally guaranteed performance of all of Irish Pub's duties, obligations and covenants under the Boston Note and the documents executed in connection therewith, including paying all sums due thereunder

23. On or about April 4, 2000, Mr. Fernandez, Irish Pub, CDM and Captec signed a Subordination Agreement (the "Boston Subordination Agreement"), which provided that the Boston Note was senior to all subordinated debt, including any form of indebtedness owed by Irish Pub to CDM or to Mr. Fernandez. The agreement provided that payments could only be made on subordinated debt provided that no default existed or would exist under the documents securing the senior debt.

[C. The Vernon Loan]

24. On or about August 10, 2000, Irish Pub executed and delivered a promissory note, as modified by a certain letter between the parties dated January 4, 2001, made payable to Captec relating to Irish Pub's acquisition, construction and/or operation of a Bennigan's franchise restaurant located in Vernon, Connecticut (the "Vernon Note"). Pursuant to the Vernon Note, Irish Pub promised to pay Captec the principal amount of $1,900,000, together with interest and other amounts thereon according to its tenor.

25. On or about August 10, 2000, CDM executed and delivered to Captec a Guaranty (the "Vernon Guaranty"), pursuant to which CDM unconditionally guaranteed performance of all of Irish Pub's duties, obligations and covenants under the Vernon Note and the documents executed in connection therewith, including paying all sums due thereunder.

26. On or about August 10, 2000, Irish Pub, CDM and Captec signed a Subordination Agreement (the "Vernon Subordination Agreement"), which provided that the Vernon Note was senior to all subordinated debt, including any form of indebtedness owed by Irish Pub to CDM and Mr. Fernandez. The agreement provided that payments could only be made on subordinated debt provided that no default existed or would exist under the documents securing the senior debt. A copy of the Vernon Subordination Agreement is annexed to the Complaint as Exhibit I. (Hereafter, the Framingham Note, the Boston Note, and the


> Vernon Note are referred to collectively as the "Notes;" the Framingham Guaranty, the Boston Guaranty, and the Vernon Guaranty are referred to collectively as the "Guaranties;" and the Boston Subordination Agreement and Vernon Subordination Agreement are referred to collectively as the "Subordination Agreements").

Plaintiff's R.56(a)1 Stmt. ¶¶ 19-26 (citations to supporting exhibits omitted). Captec, in 2002, assigned its interest in the Notes, Guaranties, and Subordination Agreements to the plaintiff.

IP became insolvent as of October, 2002. As of November 17, 2003, IP ceased making payments under the Notes. Since that time, neither IP nor CDM has made any such payments. Following the default, IP continued to pay management fees to CDM, which, in turn, made payments to the debtors and their affiliates ("the post-default transfers") as "distributions, salary payments, reimbursements, loan repayments and/or payments for credit cards." (Debtors' R.56(a)2 Stmt. ¶43.) The plaintiff commenced two actions in Connecticut Superior Court against IP and CDM: a foreclosure action, commenced April 5, 2004, against real property ("the Vernon property") securing the Vernon Note; and a contract action, commenced July 9, 2004, for breach of the Boston and Framingham Notes and Guaranties. While such actions were pending, IP, on September 7, 2004, and CDM, on October 22, 2004, filed bankruptcy petitions in the Bankruptcy Court for the District of Massachusetts ("the Massachusetts Bankruptcy Court"). After obtaining relief from stay from the Massachusetts Bankruptcy Court, the plaintiff, on May 9, 2005, obtained a judgment of strict foreclosure, and title to the Vernon property has vested in the plaintiff. The contract action remains stayed by the pending bankruptcy cases of IP and CDM.

On April 21, 2005, the debtors and their son formed FAR. The debtors

provided the funding, approximately $90,000, for FAR, in the form of a loan. FAR operated a restaurant in the Wethersfield, Connecticut location that had previously housed one of IP's "Bennigan's" restaurants.

In the CDM bankruptcy case, the Massachusetts Bankruptcy Court, on January 17, 2006, imposed sanctions of $11,200 ("the sanctions judgment") jointly against CDM, IP, and the debtors, to compensate the plaintiff for CDM's delays in complying with discovery orders. The plaintiff filed a judgment lien against 26 Great Pond Road, Glastonbury, Connecticut, the debtors' residence and, prepetition, commenced a foreclosure proceeding thereon in the Connecticut Superior Court; this action is presently stayed by the debtors' bankruptcy filing.

The plaintiff filed a proof of claim in the debtors' bankruptcy case setting forth an unsecured, unliquidated claim on the grounds that the debtors caused IP and/or CDM to transfer funds to the debtors and their affiliates, in breach of the Subordination Agreements and the debtors' fiduciary duties ("the transfer claims"); and an unsecured, liquidated claim for $11,200 under the sanctions judgment. The plaintiff, on September 12, 2006, commenced the captioned adversary proceeding by filing a six-count complaint against the debtors, the allegations of which are set forth in the Discussion, infra Part III.

### III.

### DISCUSSION

#### A.

#### Summary Judgment Standards

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered

6

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir.2003).

The burden of proof in a nondischargeability proceeding is on the creditor seeking an exception to discharge to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions enumerated in Bankruptcy Code §523(a). Grogan v. Garner, 498 U.S. 279, 286, 111 S. Ct. 654 (1991). Further, "exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code." National Union Fire Insurance Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir.1996) (citations and quotation marks omitted).

### B.

#### First Count - Sanctions Asserted Nondischargeable Under §523(a)(6)

The plaintiff contends that the sanctions judgment imposed against the debtors by the Massachusetts Bankruptcy Court is nondischargeable, pursuant to §523(a)(6), as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

7

> As used in that section, the word "willful" indicates "a deliberate or intentional *injury,* not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The injury caused by the debtor must also be malicious, meaning "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." In re Stelluti, 94 F.3d 84, 87 (2d Cir.1996). Malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." Id. at 88. (alteration in original, internal quotation marks omitted).

Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).

The plaintiff argues that "[w]ith regard to each of these elements, this Court need not relitigate the issues but rather should apply the doctrine of collateral estoppel to find that these issues have already been considered and established in the Massachusetts Bankruptcy Court and have preclusive effect as applied in this case to deny the Debtors discharge of the Sanctions Judgment...." (Plaintiff's Mem. at 15.)

> Parties may invoke collateral estoppel to preclude relitigation of the elements necessary to meet a § 523(a) exception. Id. at 285 n. 11, 111 S.Ct. 654; see also, e.g., In re Docteroff, 133 F.3d 210, 215 (3d Cir.1997) ("Collateral estoppel is applicable if the facts established by the previous judgment ... meet the requirements of nondischargeability...."). Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Purdy v. Zeldes, 337 F.3d 253, 258 & n. 5 (2d Cir.2003) (internal quotation marks omitted).

Ball, 451 F.3d at 69. The debtors contend that their failure to timely comply with discovery orders in the CDM bankruptcy was neither willful nor malicious and that the sanctions judgment made no such finding.

In support of its allegations, the plaintiff cites (1) an order, entered by the Massachusetts Bankruptcy Court on April 11, 2005, which states: "As [CDM] failed to

8

cooperate in discovery and produce all requested documents on a timely basis, [CDM] shall pay movant's attorney's fees and costs...." (Complaint Exh.R); and (2) the sanctions judgment, making the debtors personally liable for $11,200 of the plaintiff's attorney's fees. (Complaint Exh. S.) Neither of these documents includes any finding as to the intent of the debtors or the reason for the delays.

Sanctions for failure to comply with a discovery order are governed by Fed. R. Civ. P. 37, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7037. See, e.g. Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 206-207, 78 S.Ct. 1087,1092 - 1093 (1958) (sanctions for "noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a failure to make discovery"); Evans v. State of Connecticut,. 967 F.Supp. 673, 689 (D.Conn.1997), aff'd, 24 Fed.Appx. 35 (2d Cir. 2001) ("Since there was a court imposed - discovery order in this case, Rule 37 sanctions are applicable."). Rule 37 provides a broad range of sanctions that may be imposed by the court for failure to comply with discovery orders, ranging from reimbursement of a movant's attorney's fees and costs to entry of a default judgment against a noncompliant party. Willfulness is not a precondition for the imposition of Rule 37 sanctions, but may be a consideration in a court's exercise of its discretion to enter judgment against the offending party, widely considered the harshest of sanctions. Societe Internationale, 357 U.S. at 208 ("[T]he willfulness or good faith of petitioner, can hardly affect the fact of noncompliance and are relevant only to the path which the District Court might follow in dealing with petitioner's failure to comply."). Imposition of attorney's fees, the "mildest sanction," for violation of a discovery order

does not require a finding of willfulness. Evans, 967 F.Supp. at 689.

The court concludes that the Massachusetts Bankruptcy Court made no actual or necessary finding of willfulness or maliciousness in entering the sanctions judgment. Thus, whether the sanctions judgment was a debt for willful and malicious injury to the plaintiff presents a genuine issue of material fact, precluding summary judgment as to the first count of the complaint. The plaintiff's motion for summary judgment is overruled as to the first count.

### C.

### Second Count - Transfers Claimed Nondischargeable Under §523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Under well-established §523(a)(2)(A) principles, the plaintiff bears the burden of proof on each of the following five elements ("the five elements"):

> (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made. . . . To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient.

Universal Bank, N.A. v. Owen (In re Owen), 234 B.R. 857, 860 (Bankr. D.Conn. 1999) (quoting AT&T Universal Card Services Corp. v. Williams (In re Williams), 214 B.R. 433, 435 (Bankr. D. Conn. 1997)).

The subordination agreements signed by Mr. Fernandez in his individual

capacity are the source of the plaintiff's claim against the debtors. The notes obligated only IP and the guaranties obligated only CDM. Thus, the plaintiff's claim stems not from IP's default on the note or CDM's liability under the guaranties, but from the debtors' breach of the subordination agreements. The plaintiff alleges that the debtors breached the terms of the subordination agreements by making certain transfers from IP to CDM and, subsequently, to themselves and their affiliates while the notes were in default. The plaintiff seeks to recover as damages any amounts so transferred.

The debtors admit that they made the referenced transfers, but contend that any damages arising from a breach of the subordination agreements should not be excepted from discharge for fraud. The obligations under the subordination agreements were incurred, not upon IP's default on the note, but when the subordination agreements were executed. The plaintiff asserts that: "The Debtors made false representations when Mr. Fernandez ... agreed to subordinate all other debts of Irish Pub to the debt owed to [the plaintiff]." (Plaintiff's Mem. at 18.) The plaintiff argues that the falsity of such representations may be inferred from the occurrence, three years later, of a breach. That argument is unavailing; such reasoning would have the effect of making any claim for a breach of contract nondischargeable in bankruptcy, a sweeping consequence contrary to the narrowly proscribed exceptions to discharge set forth in §523. The plaintiff has failed to provide any undisputed facts from which the court could infer that, at the time the subordination agreements were executed, the debtors made any representation that they then knew to be false or that they made with the intent to deceive Captec, the plaintiff's predecessor in interest.

The plaintiff, in its reply memorandum, contends that the representations made

11

in the subordination agreements "were continuing representations upon which they obviously reneged as of November 2003 when the loans defaulted." As noted, <u>supra</u>, the court rejects such reasoning as unjustifiably enlarging the scope of the discharge exception provisions so as to make any breach of contract claim nondischargeable.

The plaintiff's motion for summary judgment is overruled as to the second count of the complaint.

### D.

### Third Count -Transfers Claimed Nondischargeable Under §523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The requirements of §523(a)(6) as to willfulness and malice are set forth in Part III.B., <u>supra</u>.

The plaintiff asserts that, in making the post-default transfers, "the Debtors have wrongfully obtained and withheld the [plaintiff's] property with the intent to deprive the [plaintiff] of that property and appropriate the same for themselves." The debtors argue that §523(a)(6) is not applicable to the transfer claim because the funds transferred were not property of the plaintiff. The plaintiff argues that because of its priority position under the terms of the subordination agreement, "the Irish Pub and CDM monies belonged first to the [plaintiff]." (Plaintiff's Reply Mem. at 6.)

Nothing in the language of the subordination agreements purports to transfer any property interest from IP, CDM, or the debtors to the plaintiff, nor to give the plaintiff any security interest in any such property. The plaintiff had, at the time of the transfers, no legally cognizable property interest in the funds transferred. Rather, as noted in Part III.C., <u>supra</u>, the plaintiff's explanation states a claim for breach of

contract. The undisputed facts asserted by the plaintiff could, at most, provide grounds for a claim against the debtors for a knowing breach of contract. However, even "a knowing breach of contract will not ordinarily rise to the level of 'willful and malicious.'" In re Peterson, 332 B.R. 678, 682 (Bankr. D.Del. 2005) (citing Geiger, 523 U.S. 57, 62); see, also   In re Lazzara, 287 B.R. 714, 722 (Bankr. N.D.Ill. 2002) ("Generally, debts for breach of contract are not excepted from discharge under § 523(a)(6)."). The undisputed facts are not sufficient to support the plaintiff's contention that the transfer claim is a debt for a "willful and malicious injury" to the plaintiff or its property, pursuant to §523(a)(6). Accordingly, the plaintiff's motion for summary judgment is overruled as to the third count of the complaint.

### E.

### Fourth Count - Transfers Claimed Nondischargeable Under §523(a)(4)

The plaintiff asserts in the fourth count that, by causing IP and CDM, while insolvent, to make transfers to the debtors, the debtors breached their fiduciary duty to the plaintiff as a creditor of those entities. The plaintiff contends that its claim is therefore nondischargeable under §523(a)(4) as a debt for "defalcation while acting in a fiduciary capacity."

"Many courts, including the Second Circuit ... have said that when a corporation becomes insolvent or enters into the zone of insolvency, the fiduciary duties of a corporation expand from its stockholders to its creditors." In re Adelphia Communications Corp. 323 B.R. 345, 386 n.140 (Bankr..S.D.N.Y. 2005). The debtors dispute that, at the time of such transfers, IP or CDM were insolvent or in the zone of insolvency. (Debtors' R.56(a)1 Stmt. ¶60.) Unless IP and CDM were insolvent at the

time of the transfers at issue, the debtors did not, at that time, have a fiduciary obligation toward the plaintiff.

Furthermore, the Second Circuit Court of Appeals has held that an exception to discharge for defalcation while acting in a fiduciary capacity requires proof not only of a fiduciary duty to the plaintiff and a breach thereof, but also "a showing of conscious misbehavior or extreme recklessness - a showing akin to the showing required for scienter in the securities law context." Denton v. Hyman (In re Hyman), 502 F.3d 61, 68 (2d Cir. 2007). The plaintiffs have provided no evidence to support such a finding. (Debtors' R.56(a)1 Stmt. at 11, ¶8.)

The court concludes that there are genuine issues of material fact as to the debtors' solvency and misconduct that preclude a grant of summary judgment as to the fourth count of the complaint.

### F.

### Fifth Count - Denial of Discharge Under §727(a)(4)(A)

In the fifth count, the plaintiff asks the court to deny the debtor a discharge pursuant to §727(a)(4)(A), under which the court may deny a discharge if "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."

"Clearly, §727 imposes an extreme penalty for wrongdoing. As such, [the Second Circuit Court of Appeals has] held that it must be strictly construed against those who object to the debtor's discharge and liberally in favor of the bankrupt." In re Chalasani, 92 F.3d 1300, 1310 (2d Cir.1996) (citation and internal quotation marks omitted). In an adversary proceeding objecting to discharge, the plaintiff bears the

14

burden of proving each element of the objection. Fed. R. Bankr. P. 4005.

> In order to support a court's denial of discharge under 11 U.S.C. § 727(a)(4)(A), the Plaintiff must establish that:
> (i)  the debtor made the statement under oath;
> (ii) such statement was false;
> (iii) the debtor knew the statement was false;
> (iv) the debtor made the statement with fraudulent intent; and
> (v)  the statement related materially to the bankruptcy case.
>
> Statements made in a bankruptcy petition and/or schedules are covered by § 727(a)(4), as are statements made during Bankruptcy Rule 2004 examinations.
>
> The objecting creditor must prove actual fraud. Once the objecting creditor meets its burden of proof and has produced persuasive evidence of a false statement, the burden of production shifts to the debtor to come forward with some credible explanation for a false statement on the schedules.
>
> A statement is not fraudulent within the meaning of the false statement exception to discharge simply because it is false. Knowingly and fraudulently means an intentional untruth in a matter material to the issue which is itself material.

<u>Northeast Alliance Fed. Credit Union v. Garcia</u> (In re Garcia), 260 B.R. 622, 630-631 (Bankr. D.Conn. 2001) (citations and quotation marks omitted).

The plaintiff asserts that, based upon its review of the records of IP and CDM in their bankruptcy cases, the debtors, in their petition, understated Mrs. Fernandez' 2004 income and the value of the debtors' interests in ACM and FAR. The debtors dispute such allegations. The debtors argue that the plaintiff's allegations are inadequately supported by the evidence it cites. The debtors also point to the heavily leveraged capital structure of FAR, the fact that it has gone out of business, and that payments to Mrs. Fernandez referred to by the plaintiff included not only her income, but also various loan repayments.

The court concludes that there are genuine issues of material fact that preclude

it from granting summary judgment and that the fifth count should proceed to trial at which the parties will have the opportunity to present their evidence to the court.

### G.

### Sixth Count - Denial of Discharge Under §727(a)(2)(A)

The sixth count seeks a denial of the debtors' discharge pursuant to §727(a)(2)(A), which provides that a debtor may be denied a discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>
> (A) property of the debtor, within one year before the date of the filing of the petition;...

The plaintiff alleges that "Within one year prior to the filing of their Bankruptcy Petition, the Fernandezes fraudulently transferred the majority of their interests in Fifth Alarm to their son, Matthew Fernandez, an insider, for no consideration." The debtors dispute such allegations, asserting that there was no transfer involved; that they and their son co-founded FAR; that start-up financing for FAR was provided by means of a $90,000 loan from the debtors to FAR, the outstanding balance of which was scheduled as an asset in the debtors' petition.

The court concludes that there are genuine issues of material fact, as to which the parties are entitled to present their evidence at trial, which preclude a grant of summary judgment.

### IV.

### CONCLUSION

In accordance with the forgoing discussion, the court concludes that the debtors'

16

objection be sustained and the plaintiff's motion for summary judgment be denied. The motion is denied and the Clerk's office is requested to reschedule the final pretrial conference. It is

SO ORDERED.

Dated at Hartford, Connecticut this 29 day of January, 2008.

_____
ROBERT L. KRECHEVSKY
UNITED STATES BANKRUPTCY JUDGE